Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

––––––––––

Filed On: July 22, 2003

No. 01–5373

RANCHO VIEJO, LLC,
APPELLANT

v.

GALE A. NORTON, SECRETARY OF THE INTERIOR, ET AL.,
APPELLEES

––––––––––

**BEFORE**: GINSBURG, *Chief Judge*, and EDWARDS, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL, GARLAND, and ROBERTS, *Circuit Judges*.

## O R D E R

Appellant's petition for rehearing en banc and the response thereto have been circulated to the full court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular, active service did not vote in favor of the petition. Upon consideration of the foregoing, it is

**ORDERED** that the petition be denied.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:

Michael C. McGrail
Deputy Clerk

*Circuit Judge* SENTELLE and *Circuit Judge* ROBERTS would grant the petition for rehearing en banc.

Separate statements of *Circuit Judge* SENTELLE and *Circuit Judge* ROBERTS dissenting from the denial of rehearing en banc are attached.

1

SENTELLE, *Circuit Judge, dissenting from denial of rehearing en banc*: The court's opinion in this case continues a divergence from contemporary Supreme Court Commerce Clause jurisprudence begun, or at least evidenced, in *National Association of Home Builders v. Babbitt*, 130 F.3d 1041 (D.C. Cir. 1997) (*NAHB*). Indeed, it broadens that divergence. At least at the time of *NAHB*, the Supreme Court had not yet entered its decision in *United States v. Morrison*, 529 U.S. 598 (2000), underlining and explaining its decision in *United States v. Lopez*, 514 U.S. 549 (1995). This time we uphold the order of the Fish and Wildlife Service to a developer to remove a fence from its own property in order to accommodate the movement of arroyo toads, a species of neither migratory habit nor commercial use. Thus, as in *NAHB*, this Circuit holds that the intrastate "taking" of a non-commercial species of fauna may be constitutionally regulated by the federal government under the authority of the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3, which empowers Congress "[t]o regulate Commerce . . . among the several states. . . ."

Once again, this Circuit upholds under the rubric of the interstate commerce power the regulation of "an activity that is neither interstate nor commerce. . . ." *NAHB*, 130 F.3d at 1061 (Sentelle, J., dissenting). As in *NAHB*, the panel's reasoning runs athwart the Supreme Court's analysis of the reach of the Commerce Clause in *Lopez*, and now in *Morrison*. Under the *Lopez* analysis, Congress may regulate (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce." *Lopez*, 514 U.S. at 558–59 (citations omitted). The arroyo toad is not a channel of commerce nor is it in one. It is not an instrumentality of commerce, nor is it a person or thing in interstate commerce. The "taking" of that toad (especially by land preparation) does not have any substantial relationship to interstate commerce. The protection of a non-commercial, purely local toad is not within any of the *Lopez* categories.

As I understand the court's rationale in the present opinion, because the "taking" of the toad is done by an entity engaging in commercial activity, Congress can regulate that taking under the third category. I disagree. In analyzing the parameters of the third category in *Lopez*, the Supreme Court examined whether:

> —the regulation controls a commercial activity, or an activity necessary to the regulation of some commercial activity;

> —the statute includes a jurisdictional nexus requirement to ensure that each regulated instance of the activity affects interstate commerce; and

> —the rationale offered to support the constitutionality of the statute (*i.e.*, statutory findings, legislative history, arguments of counsel, or a reviewing court's own attribution of purposes to the statute being challenged) has a logical stopping point so that the rationale is not so broad as to regulate on a similar basis all human endeavors, especially those traditionally regulated by the states.

*NAHB*, 130 F.3d at 1064 (Sentelle, J., dissenting) (citing *Lopez*, 514 U.S. at 559–65; other citations omitted). Protecting a toad from a land owner pinning a fence on its own property does not become commercial under any of the three elements of that examination. The point of *Lopez*, as further explained in *Morrison*, is not that Congress can regulate any activity if the act of regulating catches an entity or an action that is itself commercial independent of the noncommercial nature of the regulated entity and activity. It is rather that " '[w]here economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained.' " *Morrison*, 529 U.S. at 610 (quoting *Lopez*, 514 U.S. at 560). As the *Morrison* Court went on to explain, "a fair reading of *Lopez* shows that the noneconomic, criminal nature of the conduct at issue was central to our decision in that case," the decision to strike down the Gun–Free School Zones Act as beyond the reach of the Commerce Clause. *Id.* Despite the valiant efforts of my colleagues on the panel, the notion that the rationale of the present decision has a stop-

ping point fails. It is at odds, most importantly, with the Supreme Court. It is also conspicuously in conflict with another circuit. The Fifth Circuit has explicitly rejected the claim that federal regulation protecting a noncommercial species is permissible if the activity constituting the "take" was itself economic.

> Neither the plain language of the Commerce Clause, nor judicial decisions construing it, suggest that, concerning substantial effect *vel non*, Congress may regulate activity (here, Cave Species takes) solely because non-regulated conduct (here, commercial development) by the actor engaged in the regulated activity will have some connection to interstate commerce.... To accept [such an] analysis would allow application of otherwise unconstitutional statutes to commercial actors, but not to non-commercial actors. There would be no limit to Congress' authority to regulate intrastate activities, so long as those subjected to the regulation were entities which had an otherwise substantial connection to interstate commerce.

*GDF Realty Inv., Ltd. v. Norton*, 326 F.3d 622, 634 (5th Cir. 2003).

In fact, even if it were constitutionally sufficient that the take, although not required by the terms of the statute, coincidentally constituted activity in interstate commerce, that does not match the facts of this case. Ground preparation and erection of a fence are not commerce, and certainly not interstate. Even the construction of houses hardly constitutes interstate commerce. In short, because this decision of the court continues a line of cases in conflict with Supreme Court jurisprudence, and is in conflict with at least one other circuit, I would en banc this cause so that the full court might bring the jurisprudence of the Circuit in harmony with the Supreme Court.

ROBERTS, *Circuit Judge, dissenting from denial of rehearing en banc*: The panel's opinion in effect asks whether the challenged *regulation* substantially affects interstate commerce, rather than whether the *activity* being regulated does so. Thus, the panel sustains the application of the Act in this case because Rancho Viejo's commercial development constitutes interstate commerce and the regulation impinges on that development, not because the incidental taking of arroyo toads can be said to be interstate commerce. *See Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1071–73.

Such an approach seems inconsistent with the Supreme Court's holdings in *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000). The Court in those cases upheld facial Commerce Clause challenges to legislation prohibiting the possession of firearms in school zones and violence against women. Given *United States v. Salerno*, 481 U.S. 739 (1987), such a facial challenge can succeed only if there are no circumstances in which the Act at issue can be applied without violating the Commerce Clause. Under the panel's approach in this case, however, if the defendant in *Lopez* possessed the firearm because he was part of an interstate ring and had brought it to the school to sell it, or the defendant in *Morrison* assaulted his victims to promote interstate extortion, then clearly the challenged *regulations* in those cases would have substantially affected interstate commerce, and the facial Commerce Clause challenges would have failed.

That is precisely what the Fifth Circuit concluded recently in rejecting the approach the panel took in this case. *See GDF Realty Inv., Ltd. v. Norton*, 326 F.3d 622, 634–35 (5th Cir. 2003). As the Fifth Circuit explained, "looking primarily beyond the regulated activity . . . would 'effectually obliterate' the limiting purpose of the Commerce Clause," and, under such an approach, "the facial challenges in *Lopez* and *Morrison* would have failed." *Id.*

The panel's approach in this case leads to the result that regulating the taking of a hapless toad that, for reasons of its own, lives its entire life in California constitutes regulating "Commerce . . . among the several States." U.S. CONST. art.

I, § 8, cl. 3.  To be fair, the panel faithfully applied *National Association of Home Builders v. Babbitt*, 130 F.3d 1041 (D.C. Cir. 1997).  En banc review is appropriate because the approach of the panel in this case and *NAHB* now conflicts with the opinion of a sister circuit – a fact confirmed by that circuit's quotation from the *NAHB* dissent.  *See GDF Realty*, 326 F.3d at 636 (quoting *NAHB*, 130 F.3d at 1067 (Sentelle, J., dissenting)).  Such review would also afford the opportunity to consider alternative grounds for sustaining application of the Act that may be more consistent with Supreme Court precedent.  *See Rancho Viejo, LLC v. Norton*, 323 F.3d at 1067–68 n.2.